UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REHANA CALE,

                        Plaintiff,

                v.

MOUNT SINAI BUSINESS HEALTH and
CHARLES PSARREAS,

                        Defendants.

23-CV-3072 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Rehana Cale brings this employment discrimination action against her former employer, Mount Sinai Business Health ("MSBH"), and her former supervisor, Charles Psarreas, asserting claims for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Before the Court is Defendants' motion for summary judgment on all claims. For the reasons that follow, the motion is granted with respect to Plaintiff's Title VII claims. The Court declines to exercise supplemental jurisdiction over her New York State and City law claims.

## BACKGROUND

    The following facts are principally taken from Defendants' 56.1 statement and Plaintiff's counterstatement, as well as the parties' other submissions in connection with Defendants' motion for summary judgment. These facts are undisputed unless otherwise noted.[1]

---

[1] Pursuant to Local Civil Rule 56.1, a motion for summary judgment "must be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Rule 56.1 further requires that "[t]he papers opposing a motion for summary judgment must include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party." "[E]ach statement denying and controverting any statement of material fact[] must be followed by citation to evidence that would be admissible." Local Civil Rule

Plaintiff began employment in the Mount Sinai Health System ("Mount Sinai") in 2016. P's 56.1 ¶ 1. From 2017 through 2019, she received several reviews and performance appraisals identifying issues with her interpersonal skills, particularly with respect to her leadership and management style. *Id.* ¶¶ 21–32. As a result of these issues, in 2019, her supervisor sought to have her relocated to another department. *Id.* ¶ 3.

In the same year, Defendant Charles Psarreas, then an Administrative Director at MSBH, and Elvis DeLeon, Vice President of Ambulatory Operations for Mount Sinai Doctors Downtown ("MSDD"), hired Plaintiff as an Administrative Manager at MSBH. *Id.* ¶¶ 4–7. She began the role in October 2019 and reported to Psarreas. *Id.* ¶ 9–10. She also worked with MSBH's Medical Director, Dr. Michael Shahbaz, MSDD's Medical Director, Dr. Abigail Chen, and MSDD's Senior Director of Operations, Tonya Tolliver. *Id.* ¶¶ 15–17. During 2019, she enrolled in an evening master's in business administration ("MBA") program as well. *Id.* ¶ 45.

MSBH provides health care services to outside entities. *Id.* ¶ 12. During the height of the COVID-19 pandemic, its services largely consisted of COVID-19 testing, which it provided both at its offices and at client sites. *Id.* ¶ 13–14. Plaintiff claims that MSBH's testing facilities were

---

56.1(d). A court has discretion to deem admitted any facts asserted in a moving party's Rule 56.1 statement that the nonmoving party does not specifically controvert in the manner demanded by Rule 56.1. *See Malarczyk v. Lovgren*, No. 22-504, 2023 WL 8073099, at *1 (2d Cir. Nov. 21, 2023) (summary order); *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417–18 (2d Cir. 2009). Defendants filed a 134-paragraph Rule 56.1 Statement in support of their motion. *See* ECF No. 53. In response, Plaintiff—who is represented by counsel—filed a Counterstatement in which she failed to controvert many of Defendant's assertions. *See* ECF No. 56. In particular, Plaintiff: (1) failed to respond to approximately 100 paragraphs, *see id.* ¶¶ 1–7, 9–34, 36, 41–43, 45, 48–53, 55–57, 59–60, 62–70, 72–75, 77, 80–88, 90–93, 95–99, 101, 103, 107–09, 112–17, 119–20, 122–27, 129–30, 134; (2) in several instances, responded to Defendants' statements of fact but neither denied them outright nor contested the facts contained therein, *see id.* ¶¶ 35, 38, 39, 40, 46, 47, 54, 58, 78, 79, 89, 102, 104, 118, 121; and (3) in one instance, disputed Defendants' statement of fact but did not cite any record evidence to controvert it, *see id.* ¶ 111. With respect to the above-listed paragraphs, the Court has reviewed the portions of the record cited by Defendants and finds that the record supports their assertions. Accordingly, the facts asserted therein are deemed admitted.

Additionally, in drafting the Counterstatement, Plaintiff appears to have inadvertently misnumbered the paragraphs. To avoid confusion, all paragraph numbers cited herein will refer to the numbering system employed in Plaintiff's Counterstatement, even though they often do not correlate to the numbers in Defendant's 56.1 statement. "P's 56.1" refers to Plaintiff's 56.1 Counterstatement, ECF No. 56.

not set up safely and that, when she raised the issue to Psarreas, he responded in a verbally abusive and intimidating manner. Cale Aff. ¶¶ 10–12, 17, ECF No. 57. She claims this occurred on numerous occasions, *id.* ¶ 17, and that it began only after she raised safety concerns, Cale Tr. 25, ECF Nos. 47-2, 54-9, 58-2. She further asserts that Psarreas did not respond in a similar fashion to men who raised such concerns, *id.* at 38–39, and that she told Dr. Shahbaz in July 2020, and later Tolliver, that she believed Psarreas was discriminating against her based on her gender. Cale Aff. ¶¶ 7, 13, 17–18. Defendants dispute that Plaintiff raised the issue of gender discrimination to Dr. Shahbaz in July 2020, *see* ECF No. 60, and Tolliver denies that Plaintiff ever complained to her regarding her employment, *see* Tolliver Decl. ¶ 4.

In August 2020, as MSBH grew busier, Psarreas began to receive complaints from staff about issues with Plaintiff's collegiality, and he grew concerned about her job performance. P's 56.1 ¶¶ 33–40. Specifically, (1) Plaintiff left a client site during a major event, *id.* ¶ 35; (2) at least two employees complained that she was not nice to staff, *id.* ¶ 36; and (3) Psarreas saw her speaking impolitely to a staff member at a testing site, *id.* ¶ 38. At some point between August 2020 and early October 2020, Psarreas spoke to Plaintiff about her performance and asked her to email him at the end of each week with a summary of the efforts she made to improve her interpersonal skills, which she did on October 9 and October 16, 2020. *Id.* ¶¶ 40–43.

On October 22, 2020, Plaintiff spoke to DeLeon about Psarreas's "shift in behavior" towards her, her safety concerns, the effects of her workload on her health, and her efforts to balance her responsibilities at work with her MBA course. *See* Harman Decl., Ex. B, ECF No. 54. Plaintiff claims that, during this meeting, she attributed Psarreas's purported verbal abuse and harassment to gender discrimination, *see* Cale Tr. 38–39, but DeLeon denies that she did so, *see* DeLeon Decl. ¶ 9, ECF No. 50. On October 27, 2020, Plaintiff emailed DeLeon recounting the

3

topics they discussed on October 22 and expressing confusion regarding whether she was required to be present at offsite testing sites. *See* Harman Decl., Ex. B. In response, DeLeon scheduled a follow up meeting with Dr. Chen for later in the week. *Id.* On November 2, 2020, DeLeon emailed Plaintiff a summary of their meeting with Dr. Chen, which noted discussion regarding Plaintiff's MBA program, additional staffing, possible alternate positions for plaintiff, and available stress management resources for her as well. *Id.* Plaintiff replied thanking DeLeon for his support. *Id.* She claims that, at some point after these conversations with DeLeon, Psarreas called her and said, "I know what you told Elvis." Cale Aff. ¶ 33.

On November 23, 2020, Psarreas, DeLeon, and Tolliver put Plaintiff on a Performance Improvement Plan ("PIP"). P's 56.1 ¶ 55, DeLeon Decl. ¶ 10; Tolliver Decl. ¶ 7; Psarreas Tr. 106–08, ECF Nos. 47-3, 54-10, 58-3. The PIP identified several areas in which Plaintiff was expected to improve, including leadership, staff management, interpersonal understanding, and ownership and initiative. Harman Decl., Ex. D. With respect to these areas, it provided that she was expected to meet certain improvement goals, such as "refrain[ing] from speaking to staff and colleagues in an aggressive/condescending tone," "tak[ing] ownership of the practice operations as opposed to handing off [her] responsibilities to others," and "develop[ing] personal organizational structure to meet deadlines, [and] respond[ing] to requests appropriately and in a timely manner without requiring reminders." *Id.* Finally, it informed her that "[f]ailure to meet these expectations will result in further disciplinary action, up to and including termination." *Id.* Plaintiff refused to sign the PIP and instead delivered a "rebuttal" to Psarreas and Tolliver. P's 56.1 ¶ 62.

Two days later, on November 25, 2020, Plaintiff sent an email to Mount Sinai's Vice President of Human Resources, Christopher Berner, regarding, among other things, Psarreas's

4

"sexist and discriminatory behavior," and alleging that the PIP was imposed as retaliation for complaining about that behavior to DeLeon. Harman Decl., Ex. A. Berner directed her to contact the Director of Labor and Employee Relations, Thomas Spina, regarding her complaint, which she did on November 30, 2020. *Id.* She spoke to Spina on December 2, 2020, *id.*, and she emailed him the next day to summarize additional issues between herself, Psarreas, and Dr. Shahbaz. Cale Tr., Ex. 17. On December 11, 2020, Cale further complained to Mount Sinai's corporate compliance department, raising operational safety and labor issues and complaining that "anyone who opposes Charles [Psarreas] or Dr. Shahbaz" with respect to those issues "is blackballed and retaliated against." *Id.*, Ex. 19.

Between December 1 and December 16, 2020—while Cale was subject to the PIP—Psarreas, Tolliver, DeLeon, and Dr. Chen received numerous reports from Dr. Shahbaz and MSBH staff regarding issues with her performance, management style, and collegiality, including reports of absenteeism, scheduling mistakes, billing irregularities, incorrect financial information, and mistreatment of subordinates. *See* P's 56.1 ¶¶ 72–75, 77–89; Psarreas Decl., Exs. 1–6, ECF No. 51. On December 14, 2020, Cale informed Psarreas that she would be unable to participate in a 4:45 p.m. meeting that day due to commitments related to her MBA program. Cale Tr., Ex. 22. On December 17, 2020, Psarreas emailed Tolliver to inform her that Cale had refused—also due to commitments related to her MBA program—to extend her working hours to 5:30 p.m. to meet a request from MSBH's largest client. Psarreas Tr., Ex. 2.

On January 6, 2021, MSBH provided Cale an amended PIP, which provided examples of the performance issues she had exhibited since being placed on the initial PIP. P's 56.1 ¶ 107. Cale refused to sign the amended PIP and instead emailed Psarreas another "rebuttal." *Id.* ¶ 108. She also emailed Spina to complain about the amended PIP and stated that she felt she was the

5

"victim of . . . sexism." *Id.* ¶ 109; Cale Tr., Ex. 29.

By the following week, Psarreas, DeLeon, Tolliver, and Dr. Chen had decided to terminate Cale for continued poor job performance. *Id.* ¶ 110. DeLeon, Tolliver, and Dr. Chen met with Cale on January 15, 2021 and gave her the option to resign by January 19, 2021 or be terminated. *Id.* ¶ 112. She did not resign and was terminated. *Id.* ¶ 113.

Plaintiff commenced this action on April 12, 2023. ECF No. 1. Following discovery, Defendants filed the instant summary judgment motion, *see* ECF No. 46, which Plaintiff opposes, *see* ECF No. 55 ("Opp'n").

## LEGAL STANDARD

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015).[2] "[T]he moving party bears the burden of demonstrating the absence of a material factual question." *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, No. 11-CV-1950, 2012 WL 5964393, at *2 (S.D.N.Y. Nov. 29, 2012) (citing *Dickerson v. Napolitano,* 604 F.3d 732, 740 (2d Cir. 2010)). "[I]n making this determination, the court must view all facts in the light most favorable to the non-moving party." *Id.*

If the moving party meets its burden, "the party opposing summary judgment can defeat the motion for summary judgment 'only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in its favor, to establish the existence of an element at

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

trial.'" *Id.* (quoting *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009)). In other words, "[t]he movant has the burden of showing that there is no genuine issue of fact, but the [nonmoving party] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, "the [nonmoving party] must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 257.

## DISCUSSION

Plaintiff asserts Title VII and NYSHRL sex discrimination and retaliation claims against MSBH, and NYCHRL gender discrimination and retaliation claims against both MSBH and Psarreas.[3] She alleges that Defendants (1) subjected her to a hostile work environment; and (2) placed her on the PIP and terminated her in retaliation for complaining about that environment. Defendants argue they are entitled to summary judgment on all claims. For the reasons that follow, the Court concludes that Plaintiff's Title VII claims fail as a matter of law. It therefore declines to exercise supplemental jurisdiction over her state and city law claims.

### I.   Title VII Sex Discrimination Claim against MSBH

Cale first asserts a Title VII sex discrimination claim against MSBH. Title VII prohibits an employer from discriminating in compensation, terms, conditions, or privileges of employment, because of an individual's . . . sex." *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015). "The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment, which includes requiring people to work in

---

[3] In the complaint, Plaintiff titles both causes of action against Psarreas as claims for retaliation. *See* Compl. at 6. Because the parties appear to have briefed this matter with the understanding that Plaintiff intended to allege both gender discrimination and retaliation against Psarreas, the Court assumes this to be a typographical error and interprets the complaint accordingly. *See Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 858 n.2 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012).

a discriminatorily hostile or abusive environment." *Id.*

To withstand a motion for summary judgment on a sex discrimination claim, a plaintiff must establish that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). The parties do not dispute that the first and second elements are satisfied. Plaintiff "contends that she suffered an adverse employment action by way of a hostile work environment," Opp'n at 11, and does not appear to rely on either the PIP or her termination as an adverse employment action for purposes of this claim. Accordingly, the Court addresses Plaintiff's Title VII sex discrimination claim as alleging only a hostile work environment theory of liability.[4]

To establish a hostile work environment under Title VII, a plaintiff "must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21. "This standard has objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321. In determining whether the conduct was sufficiently severe or pervasive, courts look at "(1) the frequency of the discriminatory conduct; (2) its severity;

---

[4] Although Plaintiff's opposition to the summary judgment motion mentions "disparate treatment," Opp'n at 13, it ultimately appears to rely primarily on a hostile work environment theory of sex discrimination. In any event, to the extent Plaintiff asserts a disparate treatment theory of liability under Title VII, that claim fails as well. "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside h[er] protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Ruiz*, 609 F.3d at 494. "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Id.* at 494–95. Plaintiff "has not identified a similarly-situated employee," and thus has "failed to raise an inference of discrimination." *Id.* at 495.

8

(3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. N.Y. City Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009). Further, to be actionable under Title VII, the alleged mistreatment must have "occur[ed] because of an employee's protected characteristic." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

MSBH is entitled to summary judgment on Cale's hostile work environment claim, which appears to be predicated on Psarreas's alleged verbal abuse and intimidation in response to her safety concerns, as well as the purported "old boys' club" of Psarreas, Dr. Shahbaz, and DeLeon that enabled that conduct. *See* Opp'n at 12; Cale Aff. ¶¶ 11–15. These assertions fail to raise a triable issue of fact because Cale has not established (1) that Psarreas's conduct—or that of others at MSBH—was sufficiently pervasive or severe; or (2) any evidence of discriminatory animus on behalf of Psarreas or others.

On the record presented, no reasonable juror could find that Psarreas's conduct was sufficiently pervasive or severe to create a hostile work environment. Cale "only points to several instances when [Psarreas] raised h[is] voice or criticized [her,] . . . but those actions are not so severe as to be abusive enough to constitute a hostile work environment." *Thelwell v. City of New York*, No. 13-CV-1260, 2015 WL 4545881, at *11 (S.D.N.Y. July 28, 2015), *aff'd,* 733 F. App'x 561 (2d Cir. 2018). Indeed, "[a]llegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim." *Lucenti v. Potter,* 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006). Neither are allegations of "dismissive comments" or "intense scrutiny." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr., 303 F. App'x 943, 945 (2d Cir. 2008) (summary order).

9

This is especially true where, as Plaintiff concedes, she was not subject to explicit derogatory comments or ridicule based on her protected characteristic. *See Franco v. Am. Airlines, Inc.*, No. 21-CV-5918, 2024 WL 1054865, at *19 (S.D.N.Y. Feb. 16, 2024), *report and recommendation adopted,* No. 21-CV-5918, 2024 WL 1053824 (S.D.N.Y. Mar. 11, 2024), and *report and recommendation adopted,* No. 21-CV-5918, 2024 WL 4524614 (S.D.N.Y. Oct. 18, 2024); Cale. Tr. 133; P's 56.1 ¶ 118. "Though it is true that facially neutral comments may contribute to the hostility of an employee's work environment, there must be some basis to infer that the facially neutral comments are part of a workplace permeated with discrimination." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 360 (S.D.N.Y. 2006). Plaintiff has not produced any evidence that Psarreas's conduct—or that of any other employee—was the result of gender discrimination. *See id.* at 360 ("When a person only makes general allegations that [individuals in her protected class] are treated differently in the workplace, those allegations are insufficient to support a hostile work environment claim."). She has, for instance, provided no evidence that any similarly situated male employees were treated differently, *see supra* n.4., other than her own conclusory allegation that she "has never seen Psarreas speak to a man in that manner," Cale Tr. 38–39. And even if that were true, any inference to be drawn therefrom is undermined by the undisputed fact that Psarreas himself hired Plaintiff, P's 56.1 ¶ 125; *see Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to him an invidious motivation that would be inconsistent with the decision to hire."); *Garcia v. Barclays Cap., Inc.*, 281 F. Supp. 3d 365, 384 (S.D.N.Y. 2017) (collecting cases), and that she is among at least ten women who he hired, promoted, and/or recruited for management positions during his tenure at Mount Sinai, P's 56.1 ¶ 124; *cf. Luca v. Cnty. of Nassau*, No. 04-CV-4898, 2007 WL 1343670, at *2 (E.D.N.Y.

May 8, 2007) (reasoning that the undisputed fact that the employer hired other women instead of the plaintiff undermined her sex discrimination in hiring claim). Plaintiff therefore fails to establish that any mistreatment she may have endured was because of a protected characteristic.

Accordingly, MSBH is entitled to summary judgment with respect to Plaintiff's Title VII sex discrimination claim.

## II. Title VII Retaliation Claim against MSBH

Plaintiff also alleges that MSBH retaliated against her in violation of Title VII. Specifically, Plaintiff argues that she was placed on the PIP and amended PIP and terminated in retaliation for complaining of gender discrimination.

Title VII makes it unlawful for "an employer to discriminate against any [employee] . . . because [s]he has opposed any practice made an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a)(1). For Plaintiff to establish a prima facie case of retaliation she must show: "(1) that she participated in an activity protected by Title VII; (2) that her participation was known to her employer; (3) that her employer thereafter subjected her to a materially adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

The three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973), applies with respect to retaliation claims. *See Kaytor*, 609 F.3d at 552. Thus, "[a]t the summary judgment stage, if the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action." *Id.* at 552–53. "If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a substantial reason for the adverse employment action." *Id.* at 553.

As a threshold matter, Cale's placement on the PIP and amended PIP were not adverse employment actions cognizable under Title VII. *See Brown v. Am. Golf Corp*, 99 F. App'x 341, 343 (2d Cir. 2004) (summary order) ("We conclude that being instructed to follow the requirements of the Performance Improvement Plan did not constitute an adverse employment action."); *Burgess v. New Sch. Univ.*, No. 23-CV-4944, 2024 WL 4149240, at *10 (S.D.N.Y. Sept. 11, 2024); *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 525 (S.D.N.Y. 2015); *McGrath v. Thomson Reuters*, No. 10-CV-4944, 2012 WL 2119112, at *11 (S.D.N.Y. Apr. 30, 2012), *report and recommendation adopted,* No. 10-CV-4944, 2012 WL 2122325 (S.D.N.Y. June 12, 2012), *aff'd,* 537 F. App'x 1 (2d Cir. 2013) (collecting cases). Accordingly, the Court considers only whether Cale's termination was retaliatory. The parties' dispute over the timing of Plaintiff's initial complaint of sex discrimination in relation to the issuance of the PIP is therefore immaterial.

It is undisputed that MSBH had knowledge of Plaintiff's complaints on November 25, 2020, when she emailed human resources regarding Psarreas's "sexist and discriminatory behavior," Harman Decl., Ex. A, and that she made additional complaints between that date and her termination two months later, *see id.*, Ex. G; Cale Tr., Ex. 29. A plaintiff's retaliation claim,

12

however, cannot succeed where "she provides no direct evidence to support [her] claim other than her own conclusory testimony." *Hill*, 467 F. Supp. 2d at 364. Cale fails to provide any evidence, apart from her own conclusory testimony, that she was terminated because of her complaints of sex discrimination. Indeed, when asked at her deposition why she believed that she was retaliated against, she testified, "I mean, what else could it be? In my opinion, like I said, it didn't happen before I raised these complaints formally. So I don't know what else it could be other than retaliation[.]" Cale Tr. 136. But Plaintiff, put simply, "may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004).

Even if she could successfully establish a prima face case of retaliation, MSBH has offered legitimate, non-retaliatory reasons for her termination—namely, her documented performance issues and the litany of complaints her supervisors received about her workplace conduct while she was subject to the PIP. *See* P's 56.1 ¶¶ 110–11. Specifically, MSBH has produced examples of reports that Plaintiff (1) made significant errors, *see, e.g.,* Psarreas Decl., Ex. 4 (December 8, 2020 email from Dr. Shahbaz to Psarreas and Dr. Chen reporting billing issues), P's 56.1 ¶ 107 ("[T]he Director of Finance conveyed that she showed a lack of knowledge at a finance meeting and provided incorrect information."); (2) hampered workplace collegiality, *see, e.g.,* Psarreas Decl., Ex. 3 (December 3, 2020 email to Psarreas and Dr. Shahbaz stating "it is becoming increasingly clear that there is a lack of communication between Rehana and the staff"); *id.*, Ex. 5, (December 14, 2020 email from Dr. Shahbaz to Psarreas describing Plaintiff's "abandonment" of medical assistants); *id.*, Ex. 6 (December 16, 2020 email from a MSBH nurse forwarded to Psarreas and Tolliver stating "I am also not comfortable being in the same room with [Plaintiff] . . . after being continuously lied to and belittled"); and (3) in some instances may have prioritized her MBA program over her employment responsibilities, *see, e.g.* Psarreas Tr., Ex. 2.

These complaints—which echo those made before Plaintiff's allegations of sex discrimination—constitute non-discriminatory reasons for her termination. *See Goonewardena v. N.Y. Workers Compensation Bd.*, 258 F. Supp. 3d 326, 338–39 (S.D.N.Y. 2017), *aff'd sub nom. Goonewardena v. New York State Workers' Comp. Bd.*, 788 F. App'x 779 (2d Cir. 2019) (citing complaints about errors in the plaintiff's written work, his difficult relationship with his colleagues, his difficulty in following instructions, and his difficulty communicating as legitimate, non-discriminatory reasons for his termination); *see also Ya–Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 74–75 (2d Cir. 2015) (citing an employee's lack of "collegiality" as a legitimate basis for an employer's adverse decision); *Williams v. McCausland*, No. 90-CV-7563, 1995 WL 548862, at *13 (S.D.N.Y. Sept. 15, 1995) ("[R]efusal to obey superiors, inability to get along with coworkers, and failure to complete work in a timely manner are each, standing alone, sufficient to rebut a prima facie case.").

Cale's arguments in response are unavailing. First, she contends that MSBH's stated reason for the termination—that her performance did not improve despite the PIP—must be pretextual because "nothing was done to actually improve [her] soft skills or address the complaints about her," Opp'n at 14, and thus MSBH did not "use [the] PIP to improve her performance," *id.* at 15. But nothing in the record suggests that MSBH was obligated to do so, *see* Spina Tr. 144 (testifying that Mount Sinai had "no policy on PIPs"), and Plaintiff fails to establish either that the PIP was "unachievable," *Gorman*, 146 F. Supp. 3d at 525, or that her supervisors "actively undermined" her efforts to complete it, *Heap v. CenturyLink, Inc.*, No. 18-CV-1220, 2020 WL 1489801, at *8 (S.D.N.Y. Mar. 27, 2020). To the contrary, six weeks after Plaintiff received the PIP, which "define[d] serious areas of concern . . . and allow[ed] [her] the opportunity to demonstrate improvement," Harman Decl., Ex. D, it was extended by two weeks and amended to provide "additional examples of her poor job performance," *id.*, Ex. H.

Moreover, this argument overlooks the many complaints MSBH received about Plaintiff while she was subject to the PIP, which corroborate MSBH's proffered reason for terminating her. Rather than address these complaints, she asserts—without evidence—that they were fabricated. *See* Cale Aff. ¶¶ 37–41.  This type of conclusory assertion that "complaints about [a plaintiff's] work performance were nothing more than a pretext to terminate [her]" is "not a viable basis" for a retaliation claim. *Hu v. UGL Servs. Unicco Operations Co.*, 13-CV-4251, 2014 WL 5042150, at *6 (S.D.N.Y. Oct. 9, 2014); *see also Johnson v. Schmid*, 750 F. App'x 12, 18–19 (2d Cir. 2018) (summary order) (summary judgment appropriate where the plaintiff "has not produced any evidence to allow a reasonable jury to conclude that the [employer's] concerns about h[er] poor performance were fabricated"); *Iverson v. Verizon Commc'ns*, No. 08-CV-8873, 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) ("[The plaintiff's] own conclusory statements are the only other evidence he provides to show that [the defendant's] proffered reasons were merely a pretext for discrimination.  As a matter of law, such statements are insufficient to establish pretext.").

Finally, Plaintiff urges the Court to infer pretext from the temporal proximity between her protected complaints and her termination.  *See* Opp'n at 23–24.  Although her termination was relatively close in time to her protected activity, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage" and must be accompanied by other evidence. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013).  She fails to provide any such evidence for the reasons stated above.

Accordingly, MSBH is entitled to summary judgment with respect to Plaintiff's Title VII retaliation claim.

### III. State Law Claims

Because the parties in this action are not diverse, this Court has jurisdiction over this action only by virtue of Plaintiff's federal claims. *See id.* §§ 1332(a), 1331. Pursuant to 28 U.S.C. 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction "if it has dismissed all claims over which it has original jurisdiction." "In determining whether to continue to retain jurisdiction, district courts consider factors such as judicial economy, convenience, fairness, and comity." *Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 624 (S.D.N.Y. 2010). Here, those factors weigh in favor of declining jurisdiction and dismissing Cale's state and city law claims. *See, e.g.*, *Hsueh v. N.Y.S. Dep't of Fin. Servs.*, 15-CV-3401, 2017 WL 3671179, at *8 (S.D.N.Y. Aug. 25, 2017) ("Because the Court grants the [defendant's] motion for summary judgment on [the plaintiff's] sole federal-law claim, the Court declines to exercise supplemental jurisdiction over [the plaintiff's] state-law claims."); *Thomas v. Ariel West*, 242 F. Supp. 3d 293, 306 (S.D.N.Y. 2017) (granting summary judgment dismissing the plaintiff's federal claims and "declin[ing] to exercise supplemental jurisdiction [over the] Plaintiff's state- and city-law claims relating to those alleged violations"). The Court does so without prejudice.

### CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted with respect to Plaintiff's Title VII claims against MSBH. Plaintiff's state and city law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate all pending motions

and close this case.

SO ORDERED.

Dated: March 26, 2025
New York, New York

_____
Ronnie Abrams
United States District Judge